# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| J.T. BRYANT, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| BNSF RAILWAY COMPANY, | ) ) | Case No. 14 C 2305 |
| Defendant. | ) ) | |
| BNSF RAILWAY COMPANY, | ) | Honorable John Robert Blakey |
| Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| KINLEY CONSTRUCTION COMPANY, | ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, J.T. Bryant, worked as a machinist for BNSF Railway Company ("BNSF"). On October 23, 2012, he was injured on the job when he fell into a hole while walking around a train; he alleged that the hole "had been dug for concrete post barriers" and had been "left open and uncovered . . . ." Complaint [1], ¶4. He sued BNSF under the Federal Employers Liability Act, seeking damages for his injuries. On December 9, 2014, BNSF filed a three-count third party complaint against Kinley Construction Company ("Kinley"), which BNSF alleges was performing construction services onsite at the time of Bryant's fall. BNSF's third party complaint alleges that it had a construction services agreement with Kinley at

the time of the incident, and that Kinley breached that agreement by failing to defend and indemnify BNSF in connection with Bryant's claims (count I) and by failing to obtain all insurance required under the parties' agreement (count II). BNSF also alleges that Kinley was negligent in failing to perform services under its contract with BNSF in a manner that provided BNSF's employees with a reasonably safe place to work and walk during the project (count III). Kinley answered counts II and III, but it has moved to dismiss count I, the indemnification count, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Discussion

When analyzing a motion under Rule 12(b)(6), the Court must construe the allegations of the operative complaint in the light most favorable to BNSF, accepting as true all well-pleaded facts and drawing all reasonable inferences in its favor. *E.g., Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)(citing Fed. R. Civ. P. 12(b)(6); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). Additionally, Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

According to BNSF's third party complaint, BNSF and Kinley executed a Construction Services Agreement, which was "in full force and effect on October 23, 2012, . . . the date of the alleged underlying incident." Third Party Complaint [22],

¶9. And that agreement, BNSF alleges, required Kinley to indemnify BNSF and to appear and defend lawsuits and claims such as Bryant's. *Id.*, ¶¶11-13. In count I, BNSF alleges that Kinley failed to indemnify and defend, in breach of the agreement. *Id.*

In its motion to dismiss, Kinley argues that the contract provision requiring indemnification violates Illinois law – namely, the Illinois Construction Contract Indemnification for Negligence Act, 740 ILCS 35/1 – and is, therefore, void. BNSF disagrees, arguing that Illinois law does not even apply to this case. To resolve the dispute, the Court looks to the agreement itself, which was attached as an exhibit to BNSF's complaint.

The Construction Services Agreement provided that Kinley was to perform "railroad facility mechanical work including fuel, air, water, sand, IW, and lube oil systems, minor concrete work, pipeline investigation work, and minor grading work" during the period beginning October 8, 2010 through October 8, 2013. *See* Construction Services Agreement [22-3], pp. 1, 34. The agreement includes a provision entitled "Release of Liability and Indemnity," which provides as follows:

> b) Provider shall indemnify and hold harmless BNSF for all judgments, awards, claims, demands, and expenses (including attorneys' fees), for injury or death to all persons, including BNSF's and Provider's officers and employees, and for loss and damage to property belonging to any person, arising in any manner from Provider's or any of Provider's subcontractors' acts or omissions or failure to perform any obligation hereunder. THE LIABILITY ASSUMED BY PROVIDER SHALL NOT BE AFFECTED BY THE FACT, IF IT IS A FACT, THAT THE DESTRUCTION, DAMAGE, DEATH, OR INJURY WAS OCCASIONED BY OR CONTRIBUTED TO BY THE NEGLIGENCE OF BNSF, ITS AGENTS, SERVANTS, EMPLOYEES OR OTHERWISE, EXCEPT TO THE EXTENT THAT

3

> SUCH CLAIMS ARE PROXIMATELY CAUSED BY THE INTENTIONAL MISCONDIUCT OR GROSS NEGLIGENCE OF BNSF.
>
> c) THE INDEMNIFICATION OBLIGATION ASSUMED BY PROVIDER SHALL INCLUDE ANY CLAIMS, SUITS OR JUDGMENTS BROUGHT AGAINST BNSF UNDER THE FEDERAL EMPLOYER'S LIABILITY ACT . . . .
>
> d) Provider further agrees, at its expense, in the name and on behalf of BNSF, that it shall adjust and settle all claims made against BNSF, and shall, at BNSF's discretion, appear and defend any suits or actions at law or in equity brought against BNSF on any claim or cause of action arising or growing out of or in any manner connected with any liability assumed by Provider under this Agreement for which BNSF is liable or is alleged to be liable.

Construction Services Agreement [22-3], ¶4, p. 4 (emphasis in original). The agreement includes additional indemnification language:

> In addition to any other provision of this Agreement, in the event that all or any portion of this Article shall be deemed to be inapplicable for any reason, including without limitation as a result of a decision of an applicable court, legislative enactment or regulatory order, the parties agree that this Article shall be interpreted as requiring Provider to indemnify BNSF to the fullest extent permitted by applicable law. THROUGH THIS AGREEMENT THE PARTIES EXPRESSLY INTEND FOR PROVIDER TO INDEMNIFY BNSF FOR BNSF'S ACTS OF NEGLIGENCE.

Construction Services Agreement [22-3], ¶4(g), p. 5 (emphasis in original). Kinley does not presently dispute that these indemnification clauses apply to the underlying claims. It does, however, argue that the indemnification provisions are void under Illinois law. Thus, as a preliminary matter, the Court must decide whether Illinois law, in fact, governs.

The parties' agreement includes a Texas choice of law provision:

4

> This Agreement shall be governed by and interpreted under the laws of the State of Texas without regard to the principles of conflicts of law of such state, and any actions, proceedings or counterclaims brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Agreement must be brought in a federal or state court in the State of Texas.

Construction Services Agreement [22-3], ¶35(g), p. 29. Kinley does not address the application of this provision.

Under Illinois law, choice of law clauses are generally enforceable. "the law applicable to a contract is the law intended by the parties." *Smurfit Newsprint Corp. v. Southeast Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004). "When the parties express that intent (such as through a governing law provision), that express intent is generally recognized." *Id.* (citing *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (Ill. 1975)). To get around the parties' contractual choice of law, Kinley would have to show both that applying Texas law "would . . . violate fundamental Illinois public policy" *and* that "Illinois has a materially greater interest in the litigation than the chosen State." *Id.* (quoting *English Co. v. Northwest Envirocon, Inc.*, 663 N.E.2d 448, 452 (Ill. Ct. App. 1996)).

Texas law gives effect to indemnification clauses – even those that would allow a party to be indemnified from the consequences of its own negligence – as long as the parties specifically express that intent in their agreement. *E.g., Martin K. Eby Construction Company, Inc. v. OneBeacon Insurance Co.,* No. 13-3076, --- F.3d ---, 2015 WL 437749, at *3 (10th Cir. Feb. 3, 2015). The parties here did just that. But it would be an exaggeration to suggest that it is fundamental public policy in Illinois to void all indemnification clauses in construction contracts.

5

Indeed, "[n]ot every indemnification or hold-harmless agreement in a construction contract is unenforceable"; "[r]ather, the Act voids only those agreements that reduce the incentive to avoid construction-related injuries." *Illinois Power Company v. Duke Engineering & Services, Inc.*, No. 99 C 5384, 2002 WL 35232810, at *3-4 (N.D. Ill. March 29, 2002). In *Halloran & Yauch, Inc. v. Roughneck Concrete Drilling & Sawing Co.*, the Illinois Appellate Court noted that "contracts that could conceivably indemnify a party against its own negligence do not implicate the Indemnification Act when they 'do not involve injury suffered by a construction worker or a member of the general public but instead, damage suffered by one of the contracting parties due to the alleged negligence of another.'" No. 1-13-1059, 2013 WL 5226268, at *15 (Ill. Ct. App. Sept. 13, 2013)(quoting *Ralph Korte Construction Co. v. Springfield Mechanical Co.*, 369 N.E.2d 561, 562 (1977)). Thus we cannot say that application of the parties' choice of law provision -- and the related application of the indemnification clause – would violate a fundamental Illinois public policy.

Nor has Kinley demonstrated that Illinois has a materially greater interest in this litigation. Illinois' interest is greater in the sense that the underlying suit is brought by one of its citizens. But Bryant is seeking to enforce his rights under a federal statute, not an Illinois statute. The Court cannot say that Illinois law should govern the parties' agreement – or even that, if Illinois law were to apply, the indemnification clause would necessarily be void. Accordingly, the Court denies Kinley's motion to dismiss BNSF's claim for breach of contract based upon Kinley's alleged failure to indemnify.

6

## CONCLUSION

For the reasons explained above, Kinley's motion to dismiss count I of BNSF's Third Party Complaint [36] is denied. Kinley is given leave to file an amended answer to BNSF's complaint by March 11, 2015. The status hearing set for March 9, 2015 will still go forward; as previously indicated, the parties should be prepared at that time to set a discovery schedule.

Dated: March 5, 2015

Entered:

_____
John Robert Blakey
United States District Judge